P.C., Appellant,

v.

**DR. K., M.D., and Providence Alaska Medical Center, Appellees.**

No. S–13123.

Supreme Court of Alaska.

June 19, 2008.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

### ORDER

1. The appeal of P.C. from the order of the superior court disqualifying him from acting as surrogate for M.C. under AS 13.52.030 is DISMISSED AS MOOT. Surrogates may make healthcare decisions for a patient only if a guardian has not been appointed or is not reasonably available.[1] In this case a guardian has been appointed and is available and therefore there is no occasion for a surrogate to make healthcare decisions for M.C.

2. The Office of Public Advocacy is the guardian for M.C. The guardian takes the position that it "does not participate in end-of-life decisions for any of its clients."[2] The guardian bases this position on AS 13.26.150(e)(3) which provides:

A guardian may not ... consent on behalf of the ward to the withholding of lifesaving medical procedures; however, a guardian is not required to oppose the cessation or

---

1. AS 13.52.030(a).

2. Explanation of Position, filed in this court June 13, 2008.

withholding of lifesaving medical procedures when those procedures will serve only to prolong the dying process and offer no reasonable expectation of effecting a temporary or permanent cure of or relief from the illness or condition being treated unless the ward has clearly stated that lifesaving medical procedures not be withheld[.]

3. We interpret this statute to require a guardian of a ward whose physicians are proposing to withhold lifesaving medical procedures to decide whether or not to oppose the withholding of such procedures. In particular, the guardian may decide *not* to oppose the withholding of lifesaving medical procedures only if the procedures are futile, as defined in the statute. Further, even if the procedures are futile, the guardian must oppose withholding them if "the ward has clearly stated that lifesaving medical procedures not be withheld."

4. This case is **REMANDED** to the superior court. On remand the guardian shall decide whether to oppose or not oppose the withholding of lifesaving procedures.

5. If the guardian decides to oppose the withholding of lifesaving medical procedures and the appellees continue to disagree with this decision, the superior court shall hold a hearing under AS 13.52.060(e) and (f) as to whether the appellees are justified in withholding lifesaving medical procedures. If the court concludes that the appellees are so justified, the requirements of AS 13.52.060(g) must be observed. In particular, the guardian must in that event consider a transfer of M.C. in accordance with AS 13.52.060(g)(3).

6. If the guardian decides not to oppose the withholding of lifesaving medical procedures, P.C., or any other person interested in M.C.'s welfare, may petition the court pursuant to AS 13.26.125(a) for a review of whether the guardian's decision is in accordance with the standards set out in AS 13.26.150(e)(3). With respect to the second standard (whether "the ward has clearly stated that lifesaving medical procedures not be withheld"), the guardian has suggested that it needs evidence in its own files of M.C.'s position on end-of-life decisions. The guardian should not rely on any such lack of evidence and instead should attempt to determine what evidence there is of M.C.'s statements regarding end-of-life care.

7. The guardian in making its decision whether to oppose or not oppose the withholding of lifesaving medical procedures shall consult with the parties and their representatives, and may consult with such other persons, including potential expert witnesses, as in the judgment of the guardian is necessary and appropriate. The guardian shall expedite its decision in a manner consistent with its responsibilities and upon making its decision the guardian shall promptly advise the parties and the superior court.

8. The stay entered by this court shall remain in effect until further order of this court. Any party may move to transfer the administration and responsibility for the stay to the superior court, or upon a showing of good and sufficient cause, to vacate the stay.

WINFREE, Justice, dissenting.

I respectfully dissent from the court's order dismissing this appeal as moot. Although I agree with the court's interpretation of AS 13.26.150(e)(3) [1] and the potential obligation of a guardian to make life-ending health care decisions for M.C., it is not yet clear to me that the current guardian has the power or the willingness to make those decisions. Until it *is* clear that the current guardian has the power and willingness to fulfill a guardian's obligations under AS 13.26.150(e)(3), this appeal is not moot be-

---

1. AS 13.26.150(e)(3) states in part:
   A guardian may not
   ....
   (3) consent on behalf of the ward to the withholding of lifesaving medical procedures; however, a guardian is not required to oppose the cessation or withholding of lifesaving medical procedures when those procedures will serve only to prolong the dying process and offer no reasonable expectation of effecting a temporary or permanent cure of or relief from the illness or condition being treated unless the ward has clearly stated that lifesaving medical procedures not be withheld; a guardian is not civilly liable for acts or omissions under this paragraph unless the act or omission constitutes gross negligence or reckless or intentional misconduct[.]

cause P.C.'s surrogate issues may still need to be decided.

This litigation arose because M.C.'s guardian advised P.C. that it "had no authority over end of life issues (absent a living will, which . . . does not exist)," and that it "would not be involved in [the doctor's] decisions regarding the removal of life support." As M.C.'s spouse, P.C. thus properly (at least in a procedural sense) sought to act as the surrogate for M.C.'s health care decisions under AS 13.52.030(a) and (c).[2]

The guardian was not a named party to the litigation, but nevertheless filed a notice stating that it did not intend to intervene or, citing AS 13.26.150(e)(3), to advocate a particular position that would "clearly dictate the subsequent course of events regarding end-of-life decisions."[3] In this appeal, where again, the guardian is not a named party, the guardian submitted an "Explanation of Position" that states: "[T]he guardian believes that to formally take a position on the current issue would be equivalent to advocating a position in a manner expressly prohibited by AS 13.26.150(e)(3)."

I agree with the court that the guardian (and the trial court) misinterprets AS 13.26.150(e)(3). In my view, this statute provides that *subject to any limitation of powers or duties set forth in the governing guard-ianship order or in any specific orders issued in response to a petition to limit the guardian's powers or duties,* the guardian is *required* to oppose the withdrawal of life support to M.C. *if* (1) continued use of life support offers a "reasonable expectation of effecting a temporary or permanent cure or relief" from her current underlying condition, *or if* (2) M.C. had "clearly stated" that she would want life support to remain in place.[4]

In dismissing this appeal as moot, the court makes two unwarranted assumptions. First, the court assumes that under the existing guardianship order the guardian has the duty and authority to make end-of-life decisions. That assumption may be correct, but we do not have the order before us. Second, the court assumes that simply ordering the guardian to fulfill the obligations of AS 13.26.150(e)(3) is sufficient to moot any question of the need for a surrogate. That assumption is incorrect because the guardian, or any other interested party, may immediately petition under AS 13.26.125[5] for any number of orders that would eliminate or modify the current guardian's duties and authority. The guardian in this case could petition to resign to avoid its new-found duty to make life-ending decisions, to limit its authority over life-ending decisions, to get

2. Alaska Statute 13.52.030(a) provides, in relevant part, that "a surrogate may make a health care decision for a patient who is an adult . . . [if the] guardian is not reasonably available, and if the patient has been determined by the primary physician to lack capacity." Because the guardian was not willing to make end-of-life decisions for M.C., it was not "available" as defined by AS 13.52.390(5)(E). Alaska Statute 13.52.030(c) provides, in relevant part, that certain individuals, in descending order of priority, may act as the surrogate. Unless legally separated, a spouse has first priority. AS 13.52.030(c)(1).

3. The trial court apparently had a somewhat different view of the guardian's "authority," albeit with the same result, stating that under the statute the guardian "is not required to oppose, [and] can simply allow others to go forward in that circumstance and make those decisions."

4. Under the express terms of the statute, the guardian exposes itself to civil liability if a failure to fulfill this obligation "constitutes gross negligence or reckless or intentional misconduct." AS 13.26.150(e)(3).

5. AS 13.26.125 states in part:

(a) On petition of the ward, the guardian, or any person interested in the ward's welfare, or on the court's own motion, the court may (1) review and amend a decision of a guardian. . . . On petition of the guardian, the court may accept a resignation and make any other order that may be appropriate.
(b) The ward, the guardian, or any person interested in the ward's welfare may petition . . . for removal or resignation of the guardian, termination of the guardianship, or a change in the responsibilities of the guardian.

. . . .

(e) If . . . on the basis of a petition filed under this section or a report or other information, there is probable cause to believe a guardian is not performing the guardian's responsibilities effectively and there is an imminent danger that the physical health or safety of the ward will be seriously impaired, the court shall take whatever action is necessary to protect the ward, including the dismissal of the guardian and appointment of a temporary guardian without a hearing.

approval of a decision to make no life-ending decisions, or to turn life-ending decisions over to a temporary or substitute guardian.[6] Perhaps less likely, the guardian could ignore the court's order and simply remain unwilling to make a decision, risking civil liability.[7] But in any number of reasonably possible circumstances that may be evident in very short fashion, the guardian still may not be "available" to make the end-of-life decisions for M.C., and given the dismissal of this appeal as moot, the parties apparently then may have to start over again, somewhere at some level, for no good reason.[8] That would be most unfortunate for everyone concerned with this extremely difficult and emotion-laden case.

Until the guardian considers both the court's interpretation of AS 13.26.150(e)(3) and the current guardianship order, the guardian cannot determine whether it is obligated to act under AS 13.26.150(e). If the guardian determines it has that obligation, then the guardian must decide whether it is willing to act or will petition for relief under AS 13.26.125. If the guardian has the power to make decisions required by AS 13.26.150(e)(3) and is willing to exercise that power, *then the appeal is moot;* but we cannot say the appeal is moot *until the guardian's decision is clear.*

6. A guardian may not want the responsibility to make difficult life-ending decisions as a matter of conscience or because family members are readily available and willing to make such decisions. Here, M.C.'s guardian is a public agency that *presumably* has no policy or other limitations on making life-ending decisions under AS 13.26.150(e)(3), although we do not know. At the same time, there is a family member who wants to make the life-ending decisions under AS 13.26.150(e)(3). This dynamic may well lead to further uncertainty.

7. On the other hand, an unwilling guardian caught in these circumstances may simply object to life-ending medical action merely to avoid civil liability.

8. The landscape of future trial court proceedings is unclear to me, despite the court's explicit directives in paragraphs 5–7 of its order for dismissal and remand. The order presumes that the guardian now is a party to the underlying litigation, which in and of itself is not problematic. "By accepting appointment, a guardian submits personally to the jurisdiction of the court in

I would order that the guardian immediately determine whether the current guardianship order gives it the duty and authority to make end-of-life decisions for M.C. under AS 13.26.150(e)(3), and if so, whether it is willing to fulfill its obligation or will expeditiously petition under AS 13.26.125 for an appropriate order for relief. I would stay this appeal until reliable answers to these questions are known.

I fear that in attempting to get this case on a proper track, the court may be inviting further complications. I hope I am wrong.

any proceeding relating to the guardianship that may be instituted by any interested person." AS 13.26.115. Because the guardian has participated in this case, there is no impediment to issuing an order to the guardian in connection with this appeal or in the underlying litigation.

But what of P.C.? The trial court already has ruled he cannot serve as a surrogate if the guardian is not "available," and P.C.'s appeal of that ruling now has been dismissed. Is he still a party below? What if the guardian soon becomes not "available"? Does P.C. somehow attempt to reinstate his appeal? Or does P.C. file a new lawsuit before a different judge, because the dismissal of his appeal as moot may preclude any collateral estoppel or res judicata effect of the trial court's findings and conclusions in this case? *See, e.g., James G. v. Veronica G.,* Mem. Op. & J. No. 1237, 2006 WL 204782, at *7 (Alaska, January 25, 2006) ("The general rule is that a case mooted pending appeal cannot be given preclusive effect.") (citing 18A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4433 (2d ed.2002)).